For the reasons assigned in the opinion this day handed down in the case of the Natalbany Lumber Co., Ltd., v. Ernest F. McGraw, 188 La. 863, 178 So. 377, of the docket of this court, the judgment herein appealed from is affirmed.

HIGGINS, J., absent.

178 So. 381

**COMPANIA EXPORTADORA DE CAFE, S. A., v. BANCO NACIONAL, DE MEXICO.**
No. 34462.

Jan. 10, 1938.

Monroe & Lemann and Nicholas Callan, all of New Orleans, for appellant.

Spencer, Gidiere, Phelps & Dunbar and Charles T. Madison, all of New Orleans, for appellee.

ROGERS, Justice.

For the sake of brevity, plaintiff will be designated as Compania and defendant as Banco. The Interstate Trust & Banking Company, a party to the transaction, but

not to the suit, will be designated as Interstate.

Compania is a corporation organized under the laws of Mexico, and has its domicile at Tapachaula, State of Chiapas, Mexico, which is in a remote part of the republic.

Banco is a banking corporation organized under the laws of Mexico, with its domicile in the city of Mexico, and its principal place of business in the United States in the city of New York.

Interstate was a banking corporation organized under the laws of Louisiana, with its domicile in the city of New Orleans.

This is a suit by Compania against Banco to recover $4,059.72, the amount of two drafts placed by Compania with Interstate for acceptance and discount, with instructions to remit the proceeds to Banco's New York Agency, where Compania maintained an account. Interstate did not remit to Banco, but credited the proceeds of the drafts to an account Banco carried with Interstate. No credit for the proceeds of the drafts was ever given by Banco to Compania. Later, Interstate was placed on a restricted basis and then closed. The proceeds of the drafts remained on deposit in Interstate to the credit of Banco, to be paid to Banco in due course of Interstate's liquidation.

Answering plaintiff's petition, Banco averred that it had not received any notice from Interstate that the proceeds of the drafts had been credited to its account with

Interstate, and that; without such notice and confirmation of its action, Interstate was without any authority to enter such credit, thereby creating an obligation on its part to Compania. Defendant averred that Interstate was plaintiff's agent and not defendant's agent in the transaction. In the alternative, defendant pleaded as estoppel plaintiff's alleged laches in failing to complain of the omission of the credit for the proceeds of the drafts in a certain statement of account rendered plaintiff by defendant.

The court below gave plaintiff judgment for the amount claimed in its petition, and defendant has appealed from the judgment.

The facts are largely undisputed. They are as follows, viz.:

On February 1, 1933, Compania discounted two drafts with Interstate—one for $2,660 and the other for $1,406, with instructions to remit the net proceeds to Banco, in New York, for deposit in the account which Compania had maintained with Banco for many years. Interstate, however, did not remit the funds to New York, but credited them to the regular account Banco had carried with Interstate for about two years. This was done by Interstate pursuant to a general arrangement had with Banco and in accordance, with the particular course followed in handling three similar transactions for account of Compania in January, 1933.

On February 2, 1933, Interstate informed Compania by letter that it had remitted to

Banco the net proceeds of the drafts, and, on the same day, sent a letter and credit slip to Banco at its New York office, advising Banco that it had credited its account with the amount realized by the drafts. Banco, however, denies that it received this letter and credit slip.

On February 28, 1933, Interstate sent Banco a statement of its account for the month of February, 1933, upon which appeared as credits to Banco the items of $1,403.83 and $2,655.89, representing the net proceeds of the drafts discounted by Interstate on February 1, 1933. On March 7, 1933, Banco wrote Interstate the following letter, viz.:

"Among entries on your statement of our account as of February 28, 1933, we find your credits of February 1st, for $1,403.83 and $2,655.89, on which we have not information. We will appreciate your sending us duplicates of respective slips in order that we may be able to correspond your entries.

"With the exceptions above mentioned, your statement of account, showing a balance in our favor of $8,852.94, agrees with our books."

Interstate replied to this letter on March 20, 1933, as follows, viz.:

"We have your letter of March 7th., addressed to our Auditor, wherein you refer to our credits of February 1st, of $1,403.83 and $2,655.89.

"At the time we put through these entries we sent you advices covering same, and enclose herewith duplicates for your ready reference, showing the amounts were to be credited to Cia Exportadora de Cafe, S. A., Tapachaula, Chiapas, Mexico.

"Trusting this information will assist you in straightening out your records, we remain."

Banco admits it received this letter shortly after the date which it bears. Banco, however, did not write Interstate again until May 27, 1933, on which date Banco addressed a letter to Interstate acknowledging receipt of the duplicate advices and stating that the receipt thereof was the first it knew of the credits, no previous advices having been received, and that it was then impossible for Banco to make proper reimbursement to Compania, as the restrictions on Interstate were in effect. Banco enclosed its check for $202.99 to order of Interstate, representing 5 per cent. of the two credits, which Interstate had remitted to Banco, with the request that Interstate "reverse the remaining balance on these items and deal directly with the Cia Exportadora de Cafe, S. A., Tapachaula, Chiapas, Mexico."

On or about March 1, 1933, Interstate was closed for a few days by a bank holiday, which was declared by the state authorities. After reopening for a day, at the conclusion of this holiday, Interstate was placed upon a restricted basis by the national banking holiday, which was declared on March 6, 1933. At that time Banco's credit balance with Interstate was $14,583.40. Interstate continued to function subject to the governmental restrictions until it was closed and placed in liquidation on January 4, 1934.

Compania was a depositor in Banco and Banco was a depositor in Interstate. Compania maintained no account with Interstate, which it knew only through its discount transactions.

It is not disputed by Banco that an arrangement existed with Interstate, whereby Interstate was authorized to credit Banco with all funds received by Interstate for transmission to Banco, instead of actually remitting the funds to New York. But Banco contends that no credit became effective until after notice to and acceptance by Banco.

It is admitted that Compania had no knowledge of the arrangement existing between Banco and Interstate and that Compania did not, expressly or impliedly, consent that Interstate should credit Banco's account with its funds instead of remitting them to Banco in New York.

Banco's contention is not consistent with its previous course of dealing with Interstate. Nor is it consistent with Banco's actions concerning the particular items in dispute. Moreover, it necessarily implies that Interstate violated its plain duty to Compania when it credited Compania's funds to Banco's account, instead of remitting the funds direct to Banco, as it was instructed to do.

The transaction under review was handled by Interstate in exactly the same way three previous similar transactions, and one subsequent similar transaction, with Compania were handled.

In all the transactions, Interstate collected Compania's moneys and deposited them to Banco's account, notifying Compania of the collections and Banco of the credits. Except as to the items for which it is now sought to be held liable, Banco admits receiving all the notices sent by Interstate. Compania admits that it received all the notices sent by Interstate, without exception.

Notwithstanding Banco disclaims receipt of any notice of the credits of $1,403.83 and $2,655.89 entered on its account as of date February 1, 1933, Banco did not question the authority of Interstate to enter the credits when it received its statement of account for February, 1933, showing the credits. In its letter of March 7, 1933, acknowledging receipt of the statement of account, Banco did not request information as to those particular credits for the purpose of accepting or rejecting them. Banco merely asked for the information "in order that we may be able to correspond your entries"; that is to say, for the purpose of comparing Interstate's entries with Banco's entries.

Banco's letter, it appears to us, impliedly, if not expressly, admits that Interstate was authorized to credit Banco's account with Compania's funds which Interstate received for transmission to Banco. The letter indicates that Banco attached more importance to the entry of the credits than to the notice of their entry. From all of which it follows that notice was not necessary to complete the transaction, but was required merely for the purpose of bringing into correspondence the records of Banco and Interstate, and to enable Banco, in

turn, to properly credit the funds on its books.

It is significant that Banco did not repudiate Interstate's authority to credit its account with the items in dispute until May 27, 1933. At that time, Interstate was operating on a restricted basis and its affairs were in a precarious condition.

Banco's contention set up by way of its primary defense in this case appears to us to be the result of a pure afterthought of Banco for the purpose of escaping the liability herein sought to be imposed by Compania.

■ There is no force in Banco's alternative defense of estoppel, predicated on Compania's alleged failure to object to the correctness of the statement of account for February, 1933, in which the items in dispute were not included. It is claimed that this statement of account was sent out by Banco on March 1, 1933.

The record shows that it takes about three days by air mail and about seven or eight days by ordinary mail for a letter to reach Tapachaula from New York. Consequently, the statement of account, if sent by Banco to Compania, could not have reached Compania until the 7th or 8th of March. If Compania had promptly examined the statement and discovered the errors, all that it could have done was to notify Banco of the omissions. This could not have been of any possible benefit to Banco, because Interstate, together with all the other banking institutions of New Orleans, was closed during the state and national banking holidays in the early part of March, and Inter-

state was never thereafter reopened except on a restricted basis.

Our conclusion is that under the arrangement and course of dealing between Banco and Interstate the crediting by Interstate of the proceeds of the drafts in dispute to the account of Banco operated as an immediate transfer of the funds to Banco and constituted Banco a debtor of Compania. Hence the judgment of the district court is correct.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.

HIGGINS, J., absent.